Robert A. McKnight

v.

Joshua A. Clark and others.

No equity arises in favor of a subsequent encumbrancer against a prior mortgagee from a release of the mortgage of the latter, which, though purporting to be executed by him by attorney-in-fact, (the per-

son who signed it having sometimes acted as his attorney-at-law,) was not executed by his authority, or with his knowledge or consent, and of the existence of which he had no knowledge.

---

Bill for relief.   On final hearing on pleadings and proofs.

*Mr. Flavel McGee*, for complainant.

*Mr. W. Brinkerhoff*, for defendant Clark.

THE CHANCELLOR.

The object of this suit is to establish an equity in favor of the complainant against the defendant Clark.   The former is the holder of a certain mechanics lien claim on land at Marion, in Hudson county, on which the latter has a prior mortgage which was made in July, 1872.   The equity which the complainant seeks to establish is set up on the ground that Clark, in 1873, executed and delivered to the mortgagors (for whom the complainant built the houses, in respect of which the lien is claimed,) an agreement to release the premises on which the houses were built from the encumbrance of his mortgage, on the receipt of a pecuniary consideration therein specified, which the complainant tenders himself ready to pay.

The agreement under which the houses were built was entered into in October, 1874.   It was between the complainant and Charles A. Crane, who had himself entered into a contract with the Marion Building Company, the mortgagors, for the building of the houses.   In May, 1875, when the houses were partially built, money was raised by Crane to pay to the complainant on the contract between them, by assignment of a mortgage on the property given to him by the company.   The assignment was made to the Fifth Ward Savings Bank of Jersey City.   It was at or about that time that the complainant first ascertained that the premises were subject to Clark's mortgage.   During the negotiation for the loan, the agreement to release was pro-

McKnight *v.* Clark.

duced from the custody of the Marion Building Company, and, on the completion of the transaction, $1,750 were retained by the attorney of the savings bank, as consideration for the release of the property from the complainant's mortgage, according to the terms of the agreement to release. After that transaction the complainant went on and completed the houses, (they were finished on the 26th of June, 1875) and the balance then due him not being paid, he filed his claim of lien under the mechanics lien law, and recovered judgment thereon. The $1,750 were never, nor was any part of that money, paid to Clark, nor was any application for release made to him. He did not know of the existence of the agreement to release until long after he had begun his suit to foreclose his mortgage, which was on the 19th of June, 1875. The agreement was not signed by him, nor by his authority, express or implied. It was obtained under the following circumstances: In June, 1873, a man named Wilson, who was employed by the Marion Building Company to obtain the agreement, called on a gentleman, a counselor-at-law, who acted as attorney for Clark, and, representing that the company contemplated making sale at public auction of the mortgaged premises within about a fortnight from that time, communicated its desire to obtain releases from the mortgage, for the purposes of the sale. The attorney referred him to Clark. Subsequently Wilson, who had not called on or communicated with Clark, again called on the attorney, and the result of their interview was that the agreement to release, which was produced by Wilson, was, after sums agreed upon between them as consideration for the release of the respective lots had been inserted in the blanks left for that purpose, signed by the attorney with the name of Clark, (the attorney, though signing it as attorney, declaring that he had no authority to do so,) and was enclosed by him in a sealed envelope addressed to Clark, which was delivered to Wilson to be handed to Clark. Wilson received it on the understanding that he was to call on Clark with it, and if it

proved satisfactory to Clark—*i. e.*, if Clark was willing to make the agreement—Clark's endorsement was to be written upon it, authorizing the attorney to sign it for him. This course was taken solely to accommodate Wilson, who was desirous, in order to avoid delay, of being able to show Clark that his attorney had passed upon and was satisfied with the agreement if Clark was willing to make it.

The sale did not take place. Wilson did not present the agreement to Clark, nor approach him or communicate with him in reference to it. Nor did he return it. A short time afterwards, when the attorney spoke to him about it, and asked for it, he told him that he had destroyed it. When he received the agreement, he promised, on his honor, that he would deliver it to no one but Clark, and that if the latter did not approve of it he would return or destroy it. It appears that he not only violated the confidence reposed in him, by breaking open the sealed package entrusted to him to be delivered to Clark, but, with an utter disregard of good faith, he delivered the agreement to his principals, the Marion Building Company, in violation of his express pledge, and covered the transaction with the false statement that he had destroyed the paper.

That the attorney neither had nor professed to have authority to sign the agreement, is beyond question; and it is equally indisputable that he declared that he had no such authority. He did not even have possession of the mortgage. The agreement was, by the express understanding between him and Wilson, to have no effect whatever, unless Clark should endorse upon it his consent to the execution of it by the attorney for him. The clear weight of the evidence is that Clark was never approached or communicated with by any one in regard to the paper; that he never confirmed or recognized it at any time, in any way, and did not even know of its existence until after his suit for foreclosure had been begun. Besides, it was never delivered. There is no ground for any equity against him in respect to it. The bill will be dismissed, with costs.